1785 Middle Company Group v. Chicago Title Land and Trust Company Please step up and identify yourselves Good morning, Honorable Justices Lucas Fucsa on behalf of the appellant Say that again Lucas Fucsa, and that's F as in Frank, U-K-S as in Sam, A as in Apple on behalf of the appellant and the cross-appellant Good morning, Honorable Justices Steve Schrader on behalf of the Chicago Title Land Trust Company Eduardo Cortez and Abby Tucker and Robert Tucker I want you to know our procedure to 1515 We're pretty liberal, we let you go unless I decide to cut you off because you're repeating yourself And we give you a few minutes for your rebuttal, whatever All right, you may proceed May it please the court, the trial court in this case erred when it granted Appellee's defendants summary judgment as to counts 1 and 2 of the plaintiff's complaint Counts 1 and 2, 1 being the mechanic's name for a closure account and count 2 being a breach of contract Ultimately, the court found, surprisingly, that no contract existed among Link Company Group and Mr. Cortez, the owner of the property Now... I was kind of surprised when your client testified Did I have a contract? No I mean, I don't understand where you're coming from Frankly, I don't feel that the record reflects... That clearly was... Here's the quote Well, again, did I have a contract with him? Question mark, answer, no That's the quote from the record Well, but there were also quotes from the record stating what did happen, what kind of agreements there were And in fact, one of those things that is very alarming is that they both agree on the same thing Mr. Cortez says, Valdez proposed to remodel the house I said I'd pay for the remodeling they wanted the ones they proposed, and I approved And if you ask Mr. Varian what the agreement was he said that's exactly what was the agreement They decided that they would find this house specifically that it would be a house that needed remodeling because of Mr. Varian's capability as company link to perform the repairs and remodeling to the house that would be ultimately purchased and then that Mr. Cortez would pay for the amount subject to his approval You argue that, and I'm quoting again contract formalities were naturally relaxed among family Says who? Where's your authority for that? Other than the laws you would like it to be There's no case law suggesting that So you don't have a written contract You don't have the terms that add up to an oral contract And now you're arguing that the formalities were naturally relaxed and you don't have any citation for that? Where are you going? The issue here is that there was a contract and that the contract was based upon exactly the elements that I stated What are the specific terms of the contract? The contracts were made up of pieces that together reveal a puzzle that shows that a contract existed These pieces are the following Number one are the conversations that the parties had Stemming from their vacation together in November 2009 when they agreed that this home would be found and purchased and remodeled and the father-in-law, Mr. Cortez, would pay for the improvements Number two, you have the spreadsheets and emails I mean, how clearly are these terms defined More so than in a spreadsheet where he sends to his father-in-law I don't have any problem with those relating to the Quantum Merrillic claim But as to the existence of a contract, you're lacking But how else would there be justification for Mr. Cortez to pay That's what he states He admits approval of $236,000 How else would there be a case just for Quantum Merrillic and not an oral contract If he agreed to that If there was no agreement to those amounts How could you have just a Quantum Merrillic case? This is just an oral contract that maybe at worst was That's a gratuitous gesture I'm going to buy a house for you and let you live there without rent And I'm going to help you fix it up That's not a contract. That's a gratuitous gesture But it's not, though. Why would he do that? That's the ultimate family informality Well, the thing is, in this case, this house was not going to be Well, look, if they bought a 10,000-square-foot house Did this gentleman agree to add a 600-foot addition? Right Did he? I mean Did the gentleman, Mr. Cortez Well, certainly. I mean, that was part of the If he didn't know what size house to buy Why would he agree to put a 600-foot addition onto a 10,000-square-foot house? He didn't care Mr. Cortez simply did not care It wasn't a gratuitous gesture Well, if it was a gratuitous gesture Why would this have been, you know Something that would have required the ongoing process of updating him What's going on Sending him the spreadsheets about the cost Getting that approval Letting him know what's going on via the emails That we have plenty of So it's a contract for a blank check It's a no On a continuing basis Just keep building, keep remodeling, keep doing it I'll keep paying Well, even if it were There's at least an amount that's agreed to That he approved $236,000 for And we don't have any evidence in the record To show that $236,000 was paid Even by his own testimony Although he just says, I don't know anything But the most that we show That I think he paid was $110,000 So yes, Justice Levin That was exactly what happened in this case Just as in many situations Where you have contractors dealing with subcontractors And contractors dealing with owners Where you have extras The amounts increase Additional work is sought And approved and paid for And sometimes it's not approved And you still have a claim for a valid contract I think what you have here Is somebody who's being very gratuitous While the married couple are getting along And when they're not The gratuity stopped Why would it be gratuitous If it was ultimately Mr. Cortez that owned the home Then it means that In the end, Mr. Berrien Would not be doing this on behalf of himself For a house that he owns And I think that's a distinction The additional things that you cannot escape from In this matter Are the Rule 216 admissions You know, the admissions include There's only two items that were not admitted But when you look at the items that were admitted They include the fact that The services to be provided by a link for the defendant Included were not limited to Providing labor, materials, tools, equipment And then it goes on and provides a list Of additional items That were done to the property That are deemed admitted in this matter All right, well, why don't you explain to us Why it was appropriate for the trial court To rule against your opponent On the quantum merit claim Well, because that's an alternative count And of course if you have The two things that we have here Which are the deemed admissions Then I think that's sufficient Stand alone for a quantum merit case Obviously, quantum merit It's not going to be If there's no contract The work was performed There was no objection to the work being performed Then certainly a quantum merit case would stand I think that's quite obvious In this case though I think it's also obvious that The parties would not have gone To the extent to make these amounts of Improvements to the house Without an oral contract Remember, in your state everything is obvious But the only thing obvious here Is that there wasn't a contract in writing There should have been a contract in writing If the parties wanted to protect themselves Well, in that type of analysis then Respectfully, I don't think any Mechanics lien would be viable Stemming from an oral contract And that's not what the law provides There's been many instances of Mechanics liens stemming from oral contracts And the law certainly provides for it In fact In the Apollo case You knew what was going to go We're going to pay for this air conditioning system And we knew it was definite and finite What was going to be paid for Here, it's unending, apparently Well, there's another case It's cited within One of the cases that we cited Which was universal But there was a case that we did not cite Lead Bay Film vs. Cosmopolitan Bank And in that case The court said The purpose of a mechanics lien act Is to require a person with an interest in real property To pay for improvements or benefits Which have been induced or encouraged By his or her own conduct Look, you only get a mechanics lien If you have an enforceable contract If you don't have an enforceable contract You don't get a mechanics lien Understood Mechanics lien also says, though Very particularly Which is another basis of our argument That the contract Can be either expressed or implied So, I think you're I was looking at it from a very Just only expressed contract Set of standards That may be enforceable Not expressed, enforceable And what you don't have here Is an enforceable contract Either orally or in writing That's what the trial court said And I'm waiting for you to Persuade us that The trial court was wrong Because What are the definite terms? The definite terms are stated They were going to find a house They were going to remodel it He would approve the amounts And the work would be done In accordance with the approval of the amounts Now, those were the terms You have company parties You have valid subject matter You have legal consideration You have mutuality of obligation One to do the work The other to pay for the work And you have mutuality of agreement Those are the elements That the courts find are necessary In order to establish a contract Not even close Well, Judge That's coming strictly from the case law In relation to contracts Including oral contracts So I'm only reciting that In this case also When the Mechanics Lean Act Which is one of the few acts Really that I can find If maybe the only one That specifically in the language The legislature had a reason for saying That And I don't want to Well, it said One second Express That the contract can be either Expressed or implied And then it goes on to say Or partially expressed and partially implied And so the difference in The implied contract Is that this is a contract that's formed From parties' actions and conduct And I think certainly At minimum An implied contract was formed By the parties from their actions and conduct That being the purchasing of this house That being The approval of the purchase of this house That being the list of work That would be done to this house Submitted, reviewed by the owner Mr. Cortes Paid for, and in conjunction With the request for admissions All the work was admitted And all the work was admitted To have been done by Link You're talking implied contract And he only raises In a motion to reconsider Right I realize that But I think in this particular case Because the act includes That language in itself I don't think it's called forfeiture It's forfeited Well, I'm trying to address that That because the language of the act Itself includes the variety The variation of the contract From an express or implied That just by pleading The Illinois Mortgage Foreclosure Count Then it's sufficient I don't think you need to then plead Specifically that this was implied Because you're not You're not stating a cause of action For a breach of implied contract You're stating a cause of action For foreclosure It has to be a separate and independent It has to be pledged separately If it was a separate breach of contract That's expressed And a separate breach of contract That's implied I would tend to agree with that However, I go back to the same argument That because the act Specifically contemplates both Implied and expressed contracts That you do not have to Separately plead it as such You simply have to plead An account for foreclosure Of the mechanics lien In the end Again If you look at the language At least And this is again In the motion for summary judgment stage So there doesn't have to be There's no requirement for the plaintiff To prove its case Now, is there no genuine issue Of material fact that exists? That's the question for this court to decide And there are genuine issues Of material fact that exist Such that the motion for summary judgment Should not have been granted As far as the other Error in the public court We also appeal the Denial of the motion to reconsider Which is a standard of abuse of discretion And again There's similar conversations Similar elements that we stated For the purposes of This motion for summary judgment That should lead to the same conclusion That there was plain There was abuse of discretion Plain error By not allowing the motion to reconsider Because in the end Not only were there the conversations The payment The request to admit But also The court would be allowed Before entry after summary judgment Permit pleadings to be amended Upon just and reasonable terms That's the other side of this Of this case and of this appeal This is something that The court failed to do If there was a matter of Which there are sufficient facts To at least show that Implied contract existed Then the lower court Made an error in not allowing For an amendment That simply wouldn't have changed much Other than stating That the contract was implied Rather than expressed This should have been allowed Because it wouldn't have done Any prejudice to the other side It wouldn't have required Any additional discovery It simply would have allowed For justice to have been done Again, the only difference Between an expressed contract And the one implied in fact Is in the form of the parties Arrived at agreement by words Either verbal or written And in the latter The agreement is arrived at By consideration of their Acts and conduct So certainly At minimum in this case I feel that the court Erred in not considering The acts and conduct of the parties In deciding at minimum That an implied contract existed But more importantly Our main argument Because it's a lesser standard On the motion for summary judgment Is that there are genuine issues Of material fact that existed And the court should have given The parties an opportunity To try the matter And have a full hearing On the facts of the case As it's very fact specific As opposed to Law dependent Dependent on case law It's more about the facts And therefore We would ask that The lower court's order Granting summary judgment Be reversed And denying the motion to reconsider Also be reversed Thank you May it please the court The court did a good job Of exploring essentially The troubling nature of this case Which is This was an entirely Gratuitous gesture Made on behalf of The father-in-law For his daughter For his grandchildren And for his son-in-law To live in a home For a period of time Rent free But one thing that Was not more seriously explored Was the fact that The testimony of Valdeo Berrien Is the sole possible witness That can support plaintiff's case That there was an oral contract here That has bound Manuel Cortes To pay a balance due An oral contract That is pled And that is alleged And that is pursued By the plaintiffs in this case Is not between Valdeo Berrien And the individual In Manuel Cortes But rather it's between Link Company Group, LLC And Illinois Limited Liability Company That is For the sake of this case 100% owned by An individual by the name of Jenner Araujo The brother of Valdeo Berrien Now we have Mr. Araujo's testimony And his deposition in the record as well He's a resident of Brazil He is a I believe a doctor He knows English He has no ability To use English language whatsoever And he has no experience With construction in Illinois Or in Brazil for that matter What happened here Is that in April of 2012 A divorce case was filed And then two months later This mechanics lien case was filed But the entire case That we're proceeding under here And then the divorce case Obviously was between Ana Cortes and Valdeo Berrien The case that we're proceeding under here And that's before the court today Is did Link Company Group, LLC That Illinois Limited Liability Company Have a valid and enforceable Mechanics lien and contract With Manuel Cortes Manuel Cortes gave his deposition And said he never contracted With Link Company Group Jenner Araujo gave his deposition And said he had nothing to do With any of this He had no involvement In binding Link to Manuel Cortes So the sole remaining witness Is Valdeo Berrien Who was supposedly acting As an agent of Link Company Group As alleged by the oral argument By counsel here for Link But the problem is If you go through very carefully What the record The deposition transcript Actually says of Valdeo Berrien And what he actually testified to He never says anything With respect to binding Link Company Group With a contract with Manuel Cortes As an agent of Link Company Group He says on no fewer than nine specifications That he had a deal With his father-in-law That his father-in-law Would buy a house They would live in it Rent-free for a period of time They would fix it up And that once Anna and Valdeo Were back on their feet financially Which he anticipated To be a couple years They would buy it back from him For every dollar That Manuel Cortes paid So that's by definition A very gratuitous gesture Now he said that On nine occasions Now I asked In one question He made reference to My brother's company Would be doing the work There were follow-up questions Within that deposition testimony As to the specific role That his brothers would play And the specific thing That Valdeo Berrien stated In his deposition testimony Was that His brother's company Was going to do the work Because we were thinking Of treating it as an investment As well And the deposition transcript Goes on for about 130-something pages But the only references To Link Company Group And we can concede this For the purposes of You know The plaintiff's appeal On summary judgment Is that Cortes Had knowledge and awareness That Link would be used By Valdeo Berrien For the purposes of Valdeo Berrien's Purchase option agreement With Manuel Cortes But the reason That Valdeo Berrien Used Link Company Group Was because he was Treating it as an investment For his purposes And he says that Other times Within the deposition transcript Link did charge a bill for things Because he figured I figured In my contract with Cortes Individually That the less That Cortes paid The less that I would have to pay In the future In order to buy back The property from him Because that's The express agreement It's a purchase option Individually to benefit Valdeo Berrien That he testified to And described On no fewer than nine occasions So What is Link in this case? Well, they're the plaintiff The claim that there was An express oral contract With Manuel Cortes With a balanced due They're the plaintiffs They should very easily Be able to say Here is the terms Of the contract And as It's clearly Not just from the record And not just from the briefs And not just from the oral argument    A few things for contracts Obviously there's offer Acceptance and consideration But there's also A few things That are not In the contract And that's The terms Of the contract So What they're claiming Also necessarily Necessarily is mutuality Where the court Can actually figure out Well, what did they Actually agree to? And of course If there's a dispute of fact In summary judgment It's not appropriate But from my perspective Right now If I were to go to trial On this matter And then trial's The very next step I would have no idea What they would claim The contract is So I don't know What they're claiming The mutuality is here Did we agree On this date to do this? Did we agree On this date to do this? Did we agree That this would be The appropriate price For this? Did we agree That this was the balance due? And that this payment Is credit? I have no idea And it's not that hard For them to articulate it All they need to do Is either state In written discovery In oral discovery Or in affidavit In opposition To summary judgment Those expressed terms That satisfy They could even have said On this date I said to him I am an agent Of a company group And Link Company Group Is willing to do this If you agree To pay us this And in response He said Yes They could have provided A testimony Or an affidavit That set forth All of this Clearly So there's no Alright what about The quantum error Right As I say There's clearly A contract Described In the deposition Testimony Of Valdobarian And that contract Is to benefit him It is a Purchase option Where he can live In the house For a few years Rent free And buy it back For every dollar That Manuel Cortes paid And he said Specifically We are going to use My brother's company For this Because we are thinking Of using this As an investment Which makes Link Company Group A vehicle Whereby Valdobarian Benefits He specifically Is using them For his benefits Now It's not your Classic Subcontractor General contractor Situation But there's no Privity of contract With Link Because Link was an agent Of Valdobarian For the purposes Of helping out Valdobarian In his very big deal With his gratuitous Father-in-law And it should For the record We already have Previous testimony But from both parties That his Father-in-law Paid mortgages That they eventually Went bankrupt on And private school Tuition Just did gratuitous Things for them So What I don't Quite understand And what I was Troubled with From the trial Court's ruling Is there's clearly A contract Between Valdobarian Individually For a purchase Option If you were to Believe Valdobarian's Testimony And that if you Also believe Valdobarian's Testimony That Link was being Used for the purposes Of furthering That beneficial deal For Valdobarian Which makes An agent Which makes Lady Company Group Has a claim Against Valdobarian For any amounts That are due And owing That Link was Engaged for For furthering Valdobarian's Deal with Manuel Cortez And I think That the record Is undisputed As to the Specific Deal in place I shouldn't say It's undisputed But the only Testimony says That there was a Deal between Valdobarian and Manuel with This purchase Option And Link was Utilized for that Purpose And he expressed Escape Because we were Treating it as An investment And you know I can't read The entire transcript It's 130 pages In my oral argument Clearly You Justice Has already Done so But as I read The deposition Transcript of Valdobarian It's clear That he has A very good deal And he utilized Link for that deal And there's Another specific Time, another Specific statement That says Manuel Cortez On behalf of Link Do you agree To do this And where Manuel Says yes In response That's not A summary Judgment Denial As it relates To the Homer Paranoia Model Act I struggle With this As well But the act Itself Because we have A variety of Remedies in Our case But the court Denied summary Judgment On this As it relates To Link Company Group There's Clearly no Contract Between Manuel Cortez And Link Company Group LLC But There is A complaint Where a Party that Did not have A contract Has filed A lawsuit And said I have A contract With this Person And I Have a Mechanics Link That I'm Encumbering This property On it Six years Later It's Encumbered And That's False It's Wrong There's No evidence There's Nothing to Support that And the Court Didn't Provide any Rationale Reasoning Or Explanation But the Impression That I Walked Away With Is Well The   If you Are Not In The Contractor Modeling Act Then You As a Contractor Are Out Of luck In 2010 The Legislature Amended That To Clarify Exactly What The Remedies Are For Violation There's A Supreme Court Rule In 2008 That Dealt With A Situation Where A Sub Contractor Pled Explicitly I Am A Sub Contractor And I Want To Be A Sub Contractor In Or else I Will Not Be A Sub Contractor I Am A Sub Contractor And I Will Not Be A Sub Contractor In This Situation I   Be        Will Not Be A Sub Contractor In This Situation I Will Not Be